660 So.2d 637 (1995)
Emanuel JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 78336.
Supreme Court of Florida.
July 13, 1995.
Rehearing Denied September 22, 1995.
*641 James Marion Moorman, Public Defender; and Stephen Krosschell and Robert F. Moeller, Asst. Public Defenders, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Candance M. Sabella, Asst. Atty. Gen., Tampa, for appellee.
KOGAN, Justice.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Emanuel Johnson. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On October 4, 1988, police found the body of 73-year-old Iris White. She was naked from the waist down and had suffered twenty-four stab wounds, one incised wound, and blunt trauma to the back of the head. A variety of fatal wounds penetrated the lungs and heart. The body also showed evidence of defensive wounds and abrasions near the vagina and anus most likely caused by a forceful opening by hand or fingernails.
Police found a screen in the living room had been cut and the lower window raised. The fingerprints of Emanuel Johnson were recovered from the window sill. Police also found two pubic hairs that showed the same microscopic characteristics as Johnson's, though an expert stated that an exact identification was not possible. Johnson had done yard work for White some years earlier.
After a lengthy interrogation on October 12, 1988, Johnson gave a taped confession to police. He stated that he knocked on White's door to talk about lawn maintenance. When she opened the door, he then grabbed her, choked her to unconsciousness, and then stabbed her several times. Johnson said he then left the house, locking the door behind himself, but forgot to take White's wallet. Twenty minutes later he cut open the window screen, climbed in, took the wallet, and left. Johnson said he later threw the wallet in an area where a road surveyor later found it.
Johnson was found guilty, and the jury recommended death by a vote of 8-to-4. The trial court found the following aggravating factors: (1) prior violent felony; (2) commission of a murder for financial gain; and (3) heinous, atrocious, or cruel murder. The trial court found the following mitigating factors: (1) Johnson was raised by the father in a single-parent household; (2) He had a deprived upbringing; (3) He had an excellent relationship with other family members; (4) He was a good son who provided for his mother; (5) He had an excellent employment history; (6) He had been a good husband and father; (7) He showed love and affection to his two children; (8) He cooperated with police and confessed; (9) He had demonstrated artistic and poetic talent; (10) "The age of the Defendant at the time of the crime"; (11) Johnson "has potential for rehabilitation and productivity in the prison system"; (12) "The Court can punish the Defendant by imposing life sentences"; (13) Johnson had no significant history of criminal activity before 1988; (14) He exhibited good behavior at trial; and (15) He suffered mental pressure not reaching the level of statutory mitigation.
The trial court then found that each aggravating factor alone outweighed all the mitigating factors, and sentenced Johnson to death. The judge imposed an upward departure sentence for the burglary offense, based on the unscored capital felony and a pattern of escalating criminal activity.
As his first issue, Johnson argues that his confession was involuntary for a variety of reasons. Johnson contends that his low intelligence and mental disturbance at the time of questioning rendered his statements involuntary and thus inadmissible. As to both of these factors, the evidence in the record is conflicting. One defense expert's opinion was that Johnson was psychotic at the time he was questioned and that he had an intelligence in the retarded range. One State expert contended that Johnson was not emotionally disturbed when questioned by *642 police, had a "working-type intelligence into the average range," and knowingly waived his rights. When evidence adequately supports two conflicting theories, this Court's duty is to review the record in the light most favorable to the prevailing theory. Wuornos v. State, 644 So.2d 1012, 1019 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1708, 131 L.Ed.2d 568 (1995). The fact that evidence is conflicting does not in itself show that the State failed to meet its burden of proof except where the evidence actually supporting the State's theory, viewed in its entirety, does not legally meet the burden. Such was not the case here. Accordingly, the trial court did not err in refusing to suppress the confession on grounds of involuntariness.
Johnson next argues that his confession should be suppressed because the waiver forms used in connection with his subsequent polygraph examinations failed to reiterate some of the warnings he already had received pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and because he failed to receive additional warnings after the examinations were completed. The record is clear, however, that Johnson received proper Miranda warnings before the overall interrogation began. There is no requirement of additional warnings during the same period of interrogation where it is clear detainees are aware of their rights, as was the case here. Accordingly, we find no error.
On a related point, Johnson also contends that his confession should be suppressed because he confessed only after police told him he had failed the polygraph tests he had consented to receive. As a general rule, the fact that a polygraph examination or the prospect of receiving one has preceded or accompanied a confession does not of itself render the confession inadmissible. Johnson v. State, 166 So.2d 798 (Fla. 2d DCA 1964). Rather, there must be a sufficient showing of physical or psychological coercion, intentional deception, or a violation of a constitutional right. State v. Sawyer, 561 So.2d 278 (Fla. 2d DCA 1990); Martinez v. State, 545 So.2d 466 (Fla. 4th DCA 1989).
Absent such egregious police misconduct, the confession may be admitted; but if it is, defendants are entitled to argue to the finder of fact why the confession should be deemed untrustworthy, if they wish to do so. Johnson, 166 So.2d at 803. In sum, serious police misconduct poses a question of law for the judge, but less serious matters that may reflect on the reliability or fairness of the confession are questions of fact. Of course, putting polygraph misconduct into issue necessarily opens the door to all matters associated with the challenged examination. Thus, the decision to raise or not to raise the issue inherently is a strategic decision for the defense. The State obviously cannot broach details of a polygraph examination unless the defense has first put the matter into issue or otherwise consented.
Turning to the facts at hand, we find no violation of the principles outlined above. Police are not required to disclose every possible ramification of a waiver of rights to a detainee apart from those general statements now required by Miranda and its progeny. Nor are police required to tell detainees what may be in their personal best interests or what decision may be the most advantageous to them personally. Under our system, law enforcement officers are representatives of the state in its efforts to maintain order, and the courts may not impose upon them an obligation to effectively serve as private counselors to the accused. The latter is the obligation of private attorneys or public defenders and certainly must not be shouldered by those whose job it is to police our streets.
In the polygraph examination at issue here, police told Johnson the test results would not be admissible against him. Johnson's counsel makes much of this statement as being "misleading" because Johnson might have assumed that any statement he made in connection with the polygraph would be inadmissible. Counsel also notes that the posttest interview generally is considered to be one of several parts of a polygraph examination. While all of this may be true, these facts in and of themselves do not render Johnson's confession legally inadmissible. Police are not required to protect detainees *643 from their own unwarranted assumptions, nor are police forbidden to talk about polygraph results with a detainee who has voluntarily taken a lie-detector examination and has validly waived all rights. In sum, Johnson's confession was not legally the result of coercion, deception, or the violation of constitutional rights.
This conclusion is not undermined, as counsel contends, by Johnson's statements to police that he was tired. While such statements were made, they did not indicate in themselves a desire to reassert waived rights. Indeed, Johnson showed every indication of wishing to complete the interrogation. As such, there was no violation of rights on this basis. Nor do we believe police improperly preyed on Johnson's conscience by telling him he suffered from a serious sexual disorder and needed help. The records establishes no basis for believing police coerced Johnson or made undue promises to him. We certainly cannot agree with Johnson's analogizing the challenged statements to the so-called "Christian burial technique."[1] Using sincerely held religious beliefs against a detainee is quite a distinct issue from a simple noncoercive plea for a defendant to be candid.
Except in those narrow areas already established in law, police are not forbidden to appeal to the consciences of individuals. Any other conclusion would come perilously close to saying that the very act of trying to obtain a confession violates the rights of those who otherwise have waived their rights. Miranda creates a sufficient protection for the accused by outlining the rights they may assert or waive. After waiver, those rights may be reasserted at any time. Because Johnson chose to waive his rights and because there is no basis to establish police misconduct, we find no error. By the same token, there is no violation of the right to counsel. Traylor v. State, 596 So.2d 957 (Fla. 1992).
Johnson also challenges the admissibility of his confession on grounds that the written waiver of rights failed to meet the requirements of Florida Rule of Criminal Procedure 3.111(d)(4). The rule states that an out-of-court waiver of the right to counsel must be in writing and signed by at least two attesting witnesses. Here, the written waiver contained only a single attesting witness. In gauging violations of rules of procedure, the courts of Florida generally have held that noncompliance does not require reversal unless it has resulted in prejudice or harm to the defendant such that fundamental rights are implicated. Richardson v. State, 246 So.2d 771, 774 (Fla. 1971). This rule only applies with greater force to purely technical rules like rule 3.111(d)(4). In a highly analogous case, then-Judge Grimes noted that the complete failure to obtain the signed waiver would not require reversal in the absence of harm or prejudice. Hogan v. State, 330 So.2d 557, 559 (Fla. 2d DCA 1976). Because we find no harm or prejudice here and because any error is less serious than that in Hogan, no reversal is required on this point.[2]
As his second issue, Johnson alleges that material seized from his apartment pursuant to a search warrant should have been suppressed on grounds the officer's sworn affidavit was defective and also because the warrant did not describe with particularity the items to be seized. The warrant authorized seizure of blood-stained clothing and "hair, fiber, tissue, or any other items of forensic comparison value." Among other things, officers seized unstained clothing found in the apartment.
While we may have doubts about the validity of the language describing "any other items," we need not determine today whether this language authorized an illegal general search. Even if it did, we find the remainder of the warrant would not thereby *644 be rendered invalid,[3] and the warrant clearly authorized seizure of "fiber ... of forensic comparison value." The latter language is sufficiently precise to include unstained clothing, viewed in light of the particular facts of this case and the type of items to be seized.[4] While the actual search conducted by officers may have resulted in the collection of other evidence not directly authorized by the warrant, the record reflects that the State did not use any such evidence at trial. In fact, the trial court expressly denied the motion to suppress only with respect to the items of clothing seized at Johnson's apartment, which were properly authorized for the reasons noted above.
Johnson further argues that the relevant portions of the warrant were invalid because the accompanying affidavit made no mention that fibers had been gathered at the scene of the crime. We disagree. As a general rule, American courts have permitted a warrant to include some items not specifically addressed in the affidavit if the overall circumstances of the crime are sufficiently established and the items added are reasonably likely to have evidentiary value with regard to the type of crime. 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 3.7(d), at 112 (2d ed. 1987). There is no doubt here that a murder had occurred and that there was probable cause to believe Johnson committed it. Gathering any fiber evidence is a common object of any murder investigation, and we therefore find that the warrant lawfully included it because of the high probability such evidence would be relevant to the type of crime in question.
As his third issue, Johnson contends that reversible error occurred because of the trial court's refusal to excuse for cause a juror who had expressed favor toward the death penalty. The record discloses that this juror made these statements when the defense asked her fairly technical questions about the mitigating circumstances applicable in a penalty phase. At this point, the trial court stepped in and asked whether the juror felt she was capable of following the jury instructions she would be given. The juror said that she thought and hoped she would. Johnson now contends that these remarks were not sufficiently definite to rehabilitate the juror.
Our case law holds that jurors who have expressed strong feelings about the death penalty nevertheless may serve if they indicate an ability to abide by the trial court's instructions. Penn v. State, 574 So.2d 1079 (Fla. 1991). On this question, the trial court is in the best position to observe the attitude and demeanor of the juror and to gauge the quality of the juror's responses. If there is competent record support for the trial court's conclusions regarding rehabilitation, then the appellate courts of this state will not reverse the determination on appeal based on a cold record.
The reasons for this conclusion are evident. As the trial court below suggested, jurors brought into court face a confusing array of procedures and terminology they may little understand at the point of voir dire. It may be quite easy for either the State or the defense to elicit strong responses that jurors would genuinely reconsider once they are instructed on their legal duties and the niceties of the law. The trial court is in the best position to decide such matters where, as here, the record strongly supports such a change of heart. Moreover, the courts should not become bogged down in semantic arguments about hidden meanings behind the juror's words. So long as the record competently supports the trial court's interpretation of those words, appellate courts may not revisit the question. We therefore may not do so here.
*645 Fourth, Johnson asks this Court to consider arguments he has raised in a separate murder conviction appealed to this Court. Johnson v. State, 660 So.2d 648 (Fla. 1995). The State objects on grounds that this circumvents the page limits imposed on briefs and mixes questions posed in two separate cases involving different attorneys for the State.[5] At oral argument, Johnson's counsel countered that the page limits effectively foreclosed him from addressing any penalty-phase issues. In an abundance of caution we ordered supplemental briefing after oral argument, which renders this issue moot.
In any event, it clearly is not proper for counsel to attempt to cross-reference issues from a brief in a distinct case pending in the same court.[6] The law is well settled that failure to raise an available issue constitutes an admission that no error occurred. Moreover, we do not believe it wise to put an appellate court or opposing counsel in the position of guessing which arguments counsel deems relevant to which of the separate cases, nor do we support a rule that might encourage counsel to brief the Court through a simple incorporation by reference. Accordingly, all available issues not raised in the present briefs are barred.
In supplemental briefing, Johnson's fifth issue is that the trial court improperly limited the presentation of mitigating evidence. Johnson argues that the trial court erred in not permitting his counsel to inform the jury about the possible sentences he might receive in three other criminal cases pending in the courts. While this argument would have some merit if all such cases were consolidated for trial, Jones v. State, 569 So.2d 1234 (Fla. 1990), there is no merit where, as here, consolidation has not occurred. Marquard v. State, 641 So.2d 54 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 946, 130 L.Ed.2d 890 (1995); Nixon v. State, 572 So.2d 1336 (Fla. 1990), cert. denied, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991).
Likewise, Johnson argues that the trial court erred in refusing to let him show the jury a photograph of a daughter who had died by miscarriage. The judge did, however, permit the jury to hear information about the child and the fact that Johnson had written on the photograph the words, "My first kid. I thank God for her." We cannot fault any trial court for denying a defendant's request to present in mitigation potentially disturbing photographs that, in themselves, are of little relevance. The trial court correctly determined that the jury should be told of the photograph's existence, its importance to Johnson, and the impact the miscarriage had on him. In this light, the photograph was merely cumulative of other evidence to the degree it had actual relevance and otherwise was needlessly inflammatory or disturbing.
Johnson further contends that the trial court improperly refused to admit medical records about various psychological problems he had over many years, including suicide attempts and treatment by medication. The record, however, indicates that Johnson's counsel attempted to introduce these records without authenticating them, which is required under the evidence code. § 90.901-902, Fla. Stat. (1987). The rules of evidence may be relaxed during the penalty phase of a capital trial, but they emphatically are not to be completely ignored. Moreover, the trial court found that the records were not complete in themselves and required interpretation to be understood by the jury. The judge even offered to admit them if defense counsel laid the proper predicate, which counsel did not do. Accordingly, there was no error in declining the request in light of counsel's actions.
*646 Johnson next argues that mitigation was improperly restricted by the trial court's refusal to let counsel argue and present evidence (1) that the death penalty does not operate well as a deterrent and (2) is more expensive than life imprisonment. We find that these are not proper mitigating factors for two reasons. First, they do not meet the definition of a "mitigating factor"  matters relevant to the defendant's character or record, or to the circumstances of the offense proffered as a basis for a sentence less than death. Rogers v. State, 511 So.2d 526, 534 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988) (quoting Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978)).
Second, they are not legal arguments but rather political debate that in essence attack the propriety of the death penalty itself. Once the legislature has resolved to create a death penalty that has survived constitutional challenge, it is not the place of this or any other court to permit counsel to question the political, sociological, or economic wisdom of the enactment. Article II, section 3 of the Florida Constitution specifies a strict separation of powers, B.H. v. State, 645 So.2d 987 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2559, 132 L.Ed.2d 812 (U.S. Feb. 21, 1995), which effectively forecloses the courts of this state from attempting to resolve questions that are essentially political in nature. Rather, political questions  as opposed to legal questions  fall within the exclusive domain of the legislative and executive branches under the guidelines established by the Florida Constitution. Art. II, § 3, Fla. Const. Accordingly, the trial court did not err in refusing Johnson's request here, which would have illegally interjected the judiciary into political questions.
Sixth, Johnson asks the Court to find prejudicial error in comments made by the State. The first of these occurred after the defense elicited testimony from Johnson's companion, Bridget Chapman, that he was loving and a good father figure to his son and to her daughter from a prior relationship. The State then elicited testimony that the two sometimes had violent arguments. Johnson now argues that the latter testimony was beyond the scope of direct examination and, in any event, constituted an illegal nonstatutory aggravating factor. We disagree. When the defense puts the defendant's character in issue in the penalty phase, the State is entitled to rebut with other character evidence, including collateral crimes tending to undermine the defense's theory. Wuornos v. State, 644 So.2d 1000, 1009 & n. 5 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1705, 131 L.Ed.2d 566 (1995). Such evidence in this context does not constitute an illegal nonstatutory aggravating factor provided the State uses it strictly for rebuttal purposes. Violent conduct in a relationship tends to rebut testimony that the relationship was loving and that a defendant was a good father figure. Accordingly, the trial court did not err on this point.
Johnson likewise argues that the State's closing argument improperly portrayed him as sexually attacking the victim when he was not convicted of any such offense. The error was not properly preserved for appeal because counsel did not object until after the jury had been given its instructions and retired to deliberate. DuBoise v. State, 520 So.2d 260, 264 (Fla. 1988).
As his seventh issue, Johnson argues that the trial court improperly declined to find the statutory "mental mitigator" of extreme mental disturbance. We acknowledge that the record establishes a history of emotional problems, but the central issue here is not that such evidence exists but the weight to be accorded it. On the question of weight, the trial court's ruling will be affirmed if supported by competent substantial evidence.
The record reflects that the evidence of Johnson's disturbance in the penalty phase came largely from anecdotal lay testimony poorly correlated to the actual offense at issue. Psychological experts had testified extensively as to Johnson's mental state in the earlier suppression hearing, though counsel chose not to bring these same experts before the jury in the penalty phase. Even then, Johnson's case for mental disturbance in the suppression hearing was partially controverted *647 and is itself consistent with the trial court's conclusion that Johnson's psychological troubles did not rise to the level of a statutory mitigator. We therefore cannot fault the trial court's determination as to mental mitigation.
Johnson argues that Walls v. State, 641 So.2d 381 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995), required the trial court to find the statutory mitigator of extreme mental disturbance, but we are unpersuaded. The trial court found and weighed nonstatutory mental mitigation and expressly concluded that the evidence actually presented did not rise to the level of statutory mental mitigation. The record as it was developed below contains competent substantial evidence supporting this determination.
Johnson also appears to suggest that, had he introduced expert testimony about his mental state in the penalty phase, the trial court could simply have rejected the testimony wholesale under Walls. Actually, Walls stands for the proposition that opinion testimony unsupported by factual evidence can be rejected, but that uncontroverted and believable factual evidence supported by opinion testimony cannot be ignored. Walls, 641 So.2d at 390-91. Johnson did in fact introduce uncontroverted facts supporting a case for mental mitigation, but the record competently and substantially supports the trial court's determination of weight.
Eighth, Johnson argues various errors in the jury instructions. He contends that the trial court erred in declining to modify the standard jury instruction on the mental mitigators to eliminate adjectives such as "extreme" and "substantially." This argument rests on a fundamental misconception of Florida law. Statutory mental mitigators are distinct from those of a nonstatutory nature, and it is the latter category that Johnson's revised jury instruction attempted to recast in "statutory" terms. This in effect asked the trial court to rewrite the statutory description of mental mitigators, which is a violation of the separation of powers doctrine. Art. II, § 3, Fla. Const. Nonstatutory mental mitigators are addressed under the "catch-all" instruction, as happened here. Walls, 641 So.2d at 389. Accordingly, there was no error.
Next, Johnson contends that the jury received no instruction on judging the relative weight of aggravating factors, which must be proved beyond a reasonable doubt, and mitigating factors, which can be established by a preponderance of the evidence. As noted by the Eleventh Circuit Court of Appeals, any argument of this type evinces a misunderstanding of the law of proof. While it is true that specific burdens of proof are necessary to establish the factors, their relative weight is not itself judged by any similar standard. Once the factors are established, assigning their weight relative to one another is a question entirely within the discretion of the finder of fact, Ford v. Strickland, 696 F.2d 804 (11th Cir.), cert. denied, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), subject to this Court's constitutionally required proportionality review.
Johnson also contends that the standard instructions impermissibly place the burden of proof on the defendant to prove a case for mitigation once aggravating circumstances have been established by the State. This argument is without merit. Robinson v. State, 574 So.2d 108 (Fla.), cert. denied, 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 99 (1991). Likewise, there is no merit to Johnson's argument that Florida's jury instructions denigrate the role of the jury in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). We repeatedly have rejected similar claims. E.g., Combs v. State, 525 So.2d 853 (Fla. 1988); Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
As his ninth issue, Johnson urges the Court to find error in the use of the felony-murder aggravator, on grounds it creates an "automatic" aggravator and renders death a possible penalty even in the absence of premeditation. This contention has been repeatedly rejected by state and federal courts. E.g., Lowenfield v. Phelps, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); Stewart v. State, 588 So.2d 972 (Fla. 1991), cert. denied, *648 503 U.S. 976, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992).
Tenth, Johnson contends that the standard jury instruction on the aggravator of "heinous, atrocious, or cruel," which was given in his case, is constitutionally infirm. We find no error, Fennie v. State, 648 So.2d 95 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1120, 130 L.Ed.2d 1083 (1995), and we note in any event that the substitute instruction actually urged by Johnson at trial was not significantly different from the standard instruction. Accordingly, the issue is procedurally barred for failure to present a true alternative. Castro v. State, 644 So.2d 987, 991 n. 3 (Fla. 1994). Moreover, the stabbing-strangulation murder here qualified as heinous, atrocious, or cruel under any definition, and any conceivable error thus would be harmless.
Finally, we have reviewed this case and the two records for proportionality of the death penalty, and we find that death is proportionately warranted here. Having reviewed for other errors and finding none, the convictions and sentences are affirmed.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The Christian burial technique is the practice of inducing a detainee to tell the location of a homicide victim's body so it can receive a proper burial service. Roman v. State, 475 So.2d 1228 (Fla. 1985), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986).
[2] We find no other basis for finding the confession inadmissible.
[3] American jurisdictions are in general agreement that partial invalidity of a warrant does not in itself render the remainder invalid. An extensive discussion of this point and leading case law is contained in 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 4.6 (2d ed. 1987).
[4] LaFave, supra, notes that greater particularity is required for some types of evidence than for others, typically because the former may implicate other protected rights. Examples are records kept by news-gathering organizations and attorneys' records.
[5] For the reasons expressed in Johnson v. State, 660 So.2d 648 (Fla. 1995) and subject to the reservations stated there, we take judicial notice of the trial-court record in Case No. 78,337 to the extent it is relevant to the instant case.
[6] While Rule of Appellate Procedure 9.200(f)(2) protects counsel from a "surprise" ruling that the record is inadequate, the rule and its commentary clearly indicate that the protection exists only as to the record created in the proceeding below, not material added during a separate appeal pending in the same court.