994 So.2d 430 (2008)
The STATE of Florida, Appellant,
v.
Fabio RINCON, Appellee.
No. 3D07-2107.
District Court of Appeal of Florida, Third District.
October 29, 2008.
Rehearing Denied December 3, 2008.
Bill McCollum, Attorney General, and Lisa A. Davis and Ansley B. Peacock, Assistant Attorneys General, for appellant.
Entin & Della Fera and Richard Della Fera, Fort Lauderdale, for appellee.
*431 Before WELLS, SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, J.
The State appeals an order issued by the trial court granting the defendant's motion to suppress his statements. The first statement was made near the scene of the shooting before the defendant was advised of his Miranda[1] rights. The second statement was made at the police station after the defendant was advised of his Miranda rights, and after he waived them and agreed to speak to the police. The trial court suppressed the initial statement because the defendant was questioned without being advised of his rights, and suppressed the second statement, given by the defendant after he was advised of his rights, as "fruit of the poisonous tree." Because the defendant was not in custody when he was initially questioned by law enforcement, there was no need to advise him of his rights. We, therefore, agree with the State that the trial court erred in suppressing the defendant's statements.
The facts are as follows. The defendant called the police to report that his friend Alex had been shot and to request assistance. When the initial responding officers arrived, the defendant told them that an unknown person walked up to Alex and shot him. The defendant was asked to sit in a patrol car while the officers conducted their investigation. Shortly thereafter, Detective Chavarry arrived. Detective Chavarry did not attempt to speak to Alex, who was being tended to by rescue before being transported to the hospital. Detective Chavarry, however, did speak to the officers on the scene and learned that Alex was allegedly shot by an unknown suspect and that the defendant had witnessed the shooting.
Detective Chavarry testified that witnesses are often asked to sit in patrol cars until they can be interviewed. He also testified that the defendant was not handcuffed or restrained in any way, he was not a suspect, and he was free to leave. Detective Chavarry stated that the defendant was simply a witness to the shooting. Detective Chavarry approached the defendant, introduced himself, told the defendant that he understood he had spoken to the officers on the scene, told the defendant that the officers found some blood splatters on his car, and asked him what happened. In response, the defendant told Detective Chavarry that he had not been truthful with the officers and that he had accidentally shot his friend.
Based upon this statement, the defendant was transported to the police station where he was formally advised of his Miranda rights. The defendant waived his rights and provided a sworn statement explaining what occurred. Alex died and the defendant was charged with manslaughter.
The trial court's ruling, suppressing the defendant's statements, was premised upon its finding that the defendant's initial statement was the product of custodial interrogation and, thus, Detective Chavarry was required to advise the defendant of his Miranda rights before asking him any questions. The safeguards provided in Miranda only come into play when a person is in custody and he is subjected to express questioning by law enforcement or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "A person is in custody if a reasonable person placed in the same position would believe that his or her freedom of action was curtailed to a degree associated with *432 actual arrest." Ramirez v. State, 739 So.2d 568, 573 (Fla.1999).
The Florida Supreme Court in Ramirez identified a four-prong test to be used in determining whether a person is in custody, holding that the court should consider: (1) the manner in which the police summoned the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; and (4) whether the suspect is informed that he or she is free to leave the place of questioning. Id. at 574.
We begin our analysis with the fact that when the defendant was initially questioned by Detective Chavarry, he was not a suspect. The detective believed the defendant was a witness. In applying the above test, we note that the police did not summon the defendant for questioning the defendant summoned the police for assistance. When the police arrived, the defendant volunteered that his friend had been shot by someone he did not know. Detective Chavarry was simply following up on what the defendant had already volunteered. Although the defendant was seated in a patrol car when Detective Chavarry went to talk to him, the patrol car was at the location where the defendant had summoned the police, the patrol car was not locked, the defendant was not handcuffed or restrained, and the defendant was simply asked to sit in the car while the initial officers conducted their investigation. The purpose of Detective Chavarry's questioning of the defendant was to verify what the defendant had already told the uniform officers and to obtain additional information to assist them in their investigation. Detective Chavarry was in plain clothes and his weapon was not visible. He introduced himself to the defendant, told him he understood he had already spoken with the officers on the scene, told the defendant they had found some blood on his car, and asked him what happened. It was at this point that the defendant volunteered that he had not been truthful when he had spoken to the officers, and that he had accidentally shot his friend.
We conclude that the trial court erred when it failed to consider the factors articulated in Ramirez in determining whether the defendant was in custody for purposes of Miranda, focusing instead on the mere location where the questioning took place. The location where the questioning took place is not determinative of whether the defendant was in custody for purposes of Miranda. There can be no greater a coercive atmosphere than a police station, and yet, this Court, and other courts have found that simply being questioned at a police station does not necessarily turn the questioning of an individual into a custodial interrogation requiring Miranda warnings.
In State v. Gilles, 701 So.2d 375 (Fla. 3d DCA 1997), this Court reversed the trial court's suppression of Gilles' statements made at a police station prior to being advised of her Miranda warnings. Gilles, the wife of the deceased, who was found murdered, was taken to the police station for questioning, where she remained for several hours overnight. When Gilles was interviewed, it was believed that she was a victim and a witness to the murder and, therefore, she was not "read her rights." Id. at 376. In reversing the trial court's order suppressing Gilles' statements, this Court noted that "`[i]n determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Id. at 376-77 (quoting *433 Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). This Court found that although Gilles was interviewed at the police station, for purposes of Miranda, she was not in custody.
Generally, "on-the-scene questioning which is customarily made by investigating officers during the fact finding process" does not constitute custodial interrogation. Colocado v. State, 251 So.2d 721, 723 (Fla. 1st DCA 1971). That is so because during this early on-the-scene investigatory stage, where the police have not focused on a suspect, and the questioning is not accusatory or has its core purpose the intent to elicit a confession, Miranda is not implicated. Id. See also State v. Barnes, 245 So.2d 108, 109 (Fla. 3d DCA 1971) (reversing the trial court's order suppressing Barnes' admission that she stabbed the victim, finding that the officer's question asking Barnes "who stabbed the victim" was on-the-scene questioning, not custodial interrogation).
In this case, the defendant summoned the police for assistance when his friend was shot, and when the police arrived, he immediately volunteered that an unknown subject shot his friend. A reasonable person in the defendant's position would not believe that when he was asked to sit in a police car until they had a chance to speak with him, that he was under police custody for purposes of Miranda. At that time, the defendant was considered a witness, not a suspect, he was not restrained in any way, and he had already volunteered information indicating that he may have relevant information to assist the police with their investigation.
In State v. Polanco, 658 So.2d 1123, 1124-25 (Fla. 3d DCA 1995), in reversing the trial court's order suppressing Polanco's statement, this Court found that the questioning by the police of Polanco, a juvenile, who `"they had removed from his classroom and who"' they questioned about his whereabouts on the previous Sunday evening because he was thought to be the last or one of the last persons to see the victim alive, was not so coercive as to lead a reasonable person to believe that he was under arrest or restrained to the degree associated with a formal arrest.
Based upon the circumstances of this case, we find that the trial court erred in suppressing the defendant's on-the-scene statement. Because the defendant's constitutional rights were not violated when he made his first non-custodial statement, it is axiomatic that the second statement, which he made after being advised of his Miranda rights, and after freely and voluntarily waiving his rights, was not "fruit of the poisonous tree" requiring suppression.
We, therefore, reverse the trial court's order suppressing both the on-the-scene non-custodial statement and the subsequent custodial statement at the police station.
Reversed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).