# Third District Court of Appeal

## State of Florida

Opinion filed November 20, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1991
Lower Tribunal No. 15-660-A-K
_____

**April Thomason,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Monroe County, Luis Garcia, Judge.

O'Brien Hatfield Reese, P.A., and Rachael E. Reese and Olivia M. Goodman (Tampa), for appellant.

Ashley Moody, Attorney General, and Sandra Lipman, Senior Assistant Attorney General, for appellee.

Before EMAS, SCALES and BOKOR, JJ.

EMAS, J.

## INTRODUCTION

April Thomason (Appellant) appeals the trial court's order which summarily denied seven claims of ineffective assistance of counsel, and denied an eighth claim following an evidentiary hearing. We find no error in the trial court's determinations, and affirm. We write primarily to address the one postconviction claim of ineffective assistance of counsel for which the trial court held an evidentiary hearing.

## FACTUAL AND PROCEDURAL HISTORY

On September 16, 2015, April Thomason (Appellant) drove her vehicle erratically onto a Key West sidewalk, hitting and killing a woman and narrowly missing three pedestrians. Appellant was charged by information with five counts: vehicular homicide; leaving the scene of an accident involving death; attempted manslaughter against the second and third victims; and aggravated assault with a deadly weapon against the fourth victim. At trial, her theory of defense was insanity due to anxiolytic withdrawal syndrome: Appellant claimed she had taken Xanax for over thirty years but, days prior to the accident, she abruptly stopped taking Xanax, causing her to suffer hallucinations and seizures.

A jury found Appellant guilty of all five counts,[1] and the trial court sentenced her to a total of thirty-two years in prison, followed by probation. Appellant appealed the judgment and sentence, and this court affirmed. Thomason v. State, 305 So. 3d 20 (Fla. 3d DCA 2019).

In 2021, Appellant filed a timely pro se motion for postconviction relief, alleging her trial counsel provided constitutionally ineffective assistance by: (1) failing to move to suppress pre-Miranda statements made to or recorded by law enforcement; (2) failing to move to suppress post-Miranda statements made to or recorded by law enforcement; (3) failing to move for severance of Count Two (Leaving the Scene of an Accident Involving Death); (4) failing to move for a change of venue given the "overwhelming volume of inflammatory publicity and its prejudicial impact" on the potential jury pool; (5) failing to investigate and call certain witnesses; (7)[2] failing to "follow through" on seeking the return of non-evidentiary personal items stored in Appellant's vehicle; and (8) that cumulative error resulting from ineffective assistance of trial counsel required a new trial.

---

[1] As to Count Five (charging aggravated assault with a deadly weapon), the jury found Appellant guilty of the lesser-included offense of simple assault.

[2] Ground Six was not raised as a claim of ineffective assistance, but instead merely reasserted the claim raised in her earlier direct appeal: that the evidence adduced at trial was insufficient to sustain her conviction for vehicular homicide. See discussion *infra* at *13.

3

As to Ground Five (failure to investigate and call certain witnesses), Appellant listed several potential witnesses (noting they would have been available to testify at trial had they been asked), including Appellant's daughter (Roxy Silvasy Mahtani) and Appellant's two roommates (Vance Pacey and Duane Brinson). These witnesses—according to Appellant's motion—would have testified to "the behaviors and symptoms they observed from the very beginning of [Appellant's] cold-turkey withdrawal" from Xanax, thus adding "perspective to [Appellant's] behavior from the on-set of the withdrawal period to the time of the accident."[3]

Upon receiving the State's response (with attachments), the trial court entered a nonfinal, nonappealable order summarily denying six of the claims, granting an evidentiary hearing as to ground five (failure to investigate and call certain witnesses to testify at trial), and reserving ruling on ground eight, cumulative error.

---

[3] The motion noted that, at the conclusion of the State's medical expert's testimony, the judge asked the jury if they had any questions for the witness; the jury sent a list of six questions to the judge, including, "Did you talk to her family or friends about [Appellant's] behavior?" The witness was asked the question, and replied, "no." Appellant cites to the jury question as further evidence that counsel was ineffective in failing to call her daughter and/or her roommates as witnesses at trial.

4

During the evidentiary hearing, the trial court heard testimony from Appellant, both roommates (Pacey and Brinson), and Appellant's trial counsel (assistant public defender Kevin McCarthy):

• <u>Appellant</u> testified that she requested her trial counsel, Kevin McCarthy, to contact her roommates (Pacey and Brinson) and to call them to testify because they observed her behavior during the weeks leading up to the accident. In response, McCarthy advised Appellant that the roommates' testimony was unnecessary and testimony from the doctors would be sufficient. She further requested that Mr. McCarthy call her daughter (Roxy) to testify about Facebook messages Appellant posted documenting her withdrawal from Xanax. The defense investigator reviewed the material but told Appellant he did not think "any of it was relevant." The Facebook messages between Appellant and her daughter were admitted, and generally confirmed Appellant had stopped taking Xanax, "cold turkey."

• <u>Vance Pacey</u>, Appellant's roommate during the three weeks before the accident, testified that when Appellant first moved into the house, she was "bubbly, outgoing, just full of energy." However, "five to six days" before the accident, her behavior changed, e.g., she was not sleeping, she was having seizures (at least two days before the accident) and praying loudly. Appellant explained to him that, after years of taking Xanax, she had

5

stopped, "cold turkey." Pacey further confirmed that he spoke with defense counsel prior to trial, and that he would have made himself available to testify had he been called.

• Duane Brinson, Appellant's roommate and friend, testified that he has known Appellant since 2012. He generally echoed Pacey's testimony regarding Appellant's odd behavior (e.g., hallucinations, not sleeping) in the days leading up to the accident. Brinson did not speak directly to defense counsel but was contacted by the public defender's investigator about three days after the accident. Brinson confirmed he would have made himself available to testify.

• Kevin McCarthy, Appellant's trial counsel testified that their theory of defense—insanity based on Xanax withdrawal—required adherence to a strict timeline so as not to undermine the experts' testimony in support of the theory. More specifically, by the day of the accident, Appellant was on Day Eight of her detox. According to both sides' experts, Day Eight is the earliest time one would start to experience severe symptoms such as seizures and hallucinations. To this end, the roommates' testimony did not fit the timeline: days before the accident (pre-Day Eight) was too early for Appellant to have been suffering from seizures and hallucinations, and testimony to that effect might undermine the defense theory while bolstering the State's theory at

trial—that Appellant was exaggerating her symptoms given some of her lucid moments following the accident.

McCarthy further testified that he conducted an investigation regarding the roommates' and daughter's potential testimony. As to the former, he testified that his investigator, as well as the first doctor to treat Appellant (Dr. Mishara), each spoke with the roommates within days of the accident, and that trial counsel personally spoke with Pacey "multiple times." After discussing the matter with Appellant, McCarthy determined that "the 'cons' for the two roommates far outweighed any 'pros', because . . . they were testifying . . . to things that the medical journals and our experts were not comfortable saying was consistent" with the detoxification timeline, and were further inconsistent with what the State's expert was going to say. McCarthy explained that his strategic decision not to call the roommates to show Appellant's condition prior to the accident was "bolstered" by the existence of—in his opinion—"stronger" evidence. For instance, the defense introduced (upon stipulation by the State) a recording of a 911 call from a bystander approximately ten minutes before the accident stating: "There is a lady in her car, and she looks like she's kind of having a nervous breakdown. She's screaming at everyone that goes by her."

7

McCarthy also testified that calling the roommates to testify could have jeopardized Appellant's insanity defense, the only viable defense available to her. For instance, and as described earlier, because such testimony was inconsistent with the detoxification timeline to be provided by the experts, it might well be rejected by the jury as false or, at the very least, as exaggerating Appellant's symptoms to support the defense theory. In addition, because the roommates would testify they advised Appellant of the seizures and hallucinations while she was undergoing detox, the State might contend the case was one of "voluntary intoxication," thus negating the insanity defense. McCarthy even contacted the Miami-Dade County Public Defender Office's appellate division about the matter, and they advised: "[I]f it looks like she knew what was going on, the State has a very strong argument to not give the insanity instruction but instead argue that this is nothing more than voluntary intoxication."

As for Appellant's daughter, McCarthy's investigator spoke to her and informed McCarthy that the daughter had not personally observed any of the behavior described in the Facebook messages. McCarthy therefore determined "all she would say was all hearsay," and her testimony would have been "very limited."

The trial court denied Appellant's post-conviction motion, and this appeal followed.

**STANDARD OF REVIEW**

We apply a mixed standard of review to an order denying claims of ineffective assistance of counsel following an evidentiary hearing. We defer to the trial court's factual findings based on competent, substantial evidence presented at the evidentiary hearing, and review conclusions of law de novo. State v. Ellis, 273 So. 3d 1126, 1128 (Fla. 3d DCA 2019). We review de novo an order summarily denying postconviction relief claims. Bradshaw v. State, 304 So. 3d 1238, 1239 (Fla. 3d DCA 2020).

**ANALYSIS AND DISCUSSION**

"To obtain relief on claims of ineffective assistance of counsel, the defendant 'must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense.'" State v. Woodruff, 346 So. 3d 1238, 1241 (Fla. 3d DCA 2022) (quoting Foster v. State, 132 So. 3d 40, 52 (Fla. 2013)). To demonstrate such prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 1241-42 (quoting Strickland v. Washington, 466 U.S.

668, 694 (1984)). In the postconviction context, the <u>Strickland</u> standard requires that the defendant allege and establish both deficient performance and prejudice. Thus, if "a reviewing court determines that the defendant has not established one prong, the court is not required to analyze whether the defendant has established the other prong." <u>Frances v. State</u>, 143 So. 3d 340, 347 (Fla. 2014).

We begin by affirming, with little discussion, the trial court's denial of seven of the eight ineffective assistance of counsel claims asserted by Appellant, as counsel cannot be deemed ineffective for failing to assert nonmeritorious claims:

(1) Counsel was not ineffective for failing to file a motion to suppress body camera footage capturing Appellant's statements to police at the scene of the accident and in dash camera footage while sitting in a patrol car.[4] <u>See</u> <u>State v. Rincon</u>, 994 So. 2d 430, 433 (Fla. 3d DCA 2008) ("Generally, on-the-scene questioning which is customarily made by investigating officers during the fact-finding process does not constitute custodial interrogation. That is so because during this early on-the-scene investigatory stage, where the police have not focused on a suspect, and the questioning is not

---

[4] Two of the recordings captured pre-<u>Miranda</u> statements by Appellant and one recording captured post-<u>Miranda</u> statements by Appellant—no statements were elicited in response to custodial interrogation.

accusatory or has its core purpose the intent to elicit a confession, <u>Miranda</u> is not implicated.") (internal citation and quotation omitted); <u>Senser v. State</u>, 243 So. 3d 1003, 1009 (Fla. 4th DCA 2018) ("[I]nnocuous conversational questions on unrelated topics do not constitute interrogation questions subject to <u>Miranda</u>.")

(2) Counsel was not ineffective for failing to move to suppress post-<u>Miranda</u> statements upon Appellant's *equivocal* statements to law enforcement during questioning. <u>See</u> <u>Johnson v. State</u>, 660 So. 2d 637, 642 (Fla. 1995) ("Police are not required to disclose every possible ramification of a waiver of rights to a detainee apart from those general statements now required by <u>Miranda</u> and its progeny."); <u>State v. Owen</u>, 696 So. 2d 715, 719 (Fla. 1997) (adopting the legal principle announced in <u>Davis v. United States</u>, 512 U.S. 452 (1994), and holding that "police in Florida need not ask clarifying questions if a defendant who has received proper <u>Miranda</u> warnings makes only an equivocal or ambiguous request to terminate an interrogation after having validly waived his or her <u>Miranda</u> rights"); <u>compare with</u> <u>Owen v. State</u>, 862 So. 2d 687, 696-98 (Fla. 2003) (holding that "I don't want to talk about it" and "I'd rather not talk about it" were equivocal invocations of right to silence and therefore officers had no duty to terminate questioning or limit themselves to asking only clarifying questions).

(3) Counsel was not ineffective for failing to file a motion for severance of count two (Leaving the Scene of an Accident Involving Death) because the various counts are linked and "connected in an episodic sense." See Smith v. State, 213 So. 3d 722, 746 (Fla. 2017) ("Because the counts were linked, the trial court did not err in failing to grant the motion to sever. Therefore, appellate counsel cannot be ineffective for failing to raise a nonmeritorious issue.") (internal citation omitted); see also Vinas v. State, 299 So. 3d 456, 458 (Fla. 3d DCA 2020) (quotation omitted).

(4) Counsel was not ineffective for failing to move for a change of venue based on the allegedly inflammatory pretrial publicity, as Appellant did not present evidence such a motion would have been successful. See Griffin v. State, 866 So. 2d 1, 12 (Fla. 2003) (explaining that, to prove prejudice under Strickland, the defendant must, at a minimum, "bring forth evidence demonstrating that there is a reasonable probability [] the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court,"; further explaining that , in exercising its discretion on a motion to transfer, the trial court evaluates: "(1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury.") (quotation and internal citations omitted).

(6) The evidence adduced at trial was sufficient to sustain Appellant's conviction for vehicular homicide. See Thomason, 305 So. 3d at 20 (affirming final judgment in this case where Appellant raised, on direct appeal, the insufficiency of the evidence presented at trial); Childers v. State, 782 So. 2d 946, 947 (Fla. 4th DCA 2001) ("Appellant's challenge to the sufficiency of the evidence was an issue for direct appeal, and therefore not cognizable under rule 3.850.")

(7) Counsel was not ineffective for failing to "follow through on judge's instruction to return non-evidentiary personal items stored in defendant's vehicle that was impound[ed] by police as evidence for the prosecution," as—at a minimum—this is not a cognizable ground for postconviction relief.

(8) Because there is no merit to any of the grounds raised, there can be no cumulative error. Atwater v. State, 788 So. 2d 223, 228 n. 5 (Fla. 2001) ("Because we determine no errors occurred, we necessarily must conclude that this claim [of cumulative error] is without merit.")

This leaves us with the remaining ground for which the trial court held an evidentiary hearing: that trial counsel provided constitutionally ineffective assistance by failing "to investigate, depose or call friends, roommates and family members" to testify at trial "to matters relevant to her defense."

13

Appellant's argument incorrectly focuses on trial counsel's <u>ultimate decision</u>, rather than on the <u>underlying investigation</u> leading to that decision. As this court has previously explained: "Whether to call a particular witness to testify at trial is ordinarily a strategic decision committed to the professional judgment of trial counsel, *assuming that counsel has conducted a reasonable investigation before making such a decision*. These strategic decisions are generally not subject to postconviction attack under <u>Strickland</u>." <u>Mendoza v. State</u>, 81 So. 3d 579, 581 (Fla. 3d DCA 2012) (emphasis added). <u>Strickland</u> was careful to establish this important distinction:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options **are virtually unchallengeable**; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

<u>Strickland</u>, 466 U.S. at 690-691 (emphasis added).

Thus, if counsel conducts a reasonable investigation, the decision made by counsel following such investigation is presumed to be reasonable and strategic, and a defendant can rebut this presumption only by

14

establishing that "*no* competent counsel" would have made the same strategic decision. <u>White v. State</u>, 729 So. 2d 909, 912 (Fla.1999) (alteration in original) (quotation omitted). <u>See also</u> <u>Windom v. State</u>, 886 So. 2d 915, 922 (Fla. 2004) (quoting trial court's order denying post-conviction relief: "A strategic or tactical decision is not a valid basis for an ineffective claim unless a defendant is able to show that no competent trial counsel would have utilized the tactics employed by trial counsel.") Appellant failed to rebut the presumption. Indeed, the testimony presented at the evidentiary hearing established (and the trial court found) that McCarthy's decision not to call these and other witnesses was made after conducting a reasonable investigation and after consulting with Appellant.

**<u>CONCLUSION</u>**

We hold that the trial court's determination—that trial counsel made a "reasonable strategic decision not to call these witnesses at trial,"—is supported by competent substantial evidence, and that, in light of the reasonable investigation by trial counsel, Appellant has failed to overcome the presumption that her trial counsel's decisions were made for strategic purposes.

Affirmed.